# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI, SOUTHERN DIVISION

| | |
|---|---|
| **RYAN STANBURY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**T-MOBILE USA, INC.,** a Delaware corporation, and **SUNRISE COMMUNICATIONS, INC.**, a Missouri corporation,<br><br>*Defendants*. | Case No. 6:17-cv-3396<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ryan Stanbury ("Stanbury" or "Plaintiff Stanbury") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant T-Mobile") and Defendant Sunrise Communications, Inc. ("Sunrise" or "Defendant Sunrise") to stop their practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct. Plaintiff Stanbury, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Stanbury is a natural person residing in Los Angeles in the State of California.

2. Defendant T-Mobile is a Delaware corporation with its principle place of business in Tumwater, Washington. Defendant does business in this District, and throughout the State of Missouri.

3. Defendant Sunrise is a Missouri corporation with its principle place of business in Springfield, Missouri. Defendant does business in this District, and throughout the State of Missouri.

4. Each of the Defendants was the agent of the other Defendant and was during all relevant times acting and conducting themselves within the purpose and scope of such agency. Plaintiff is informed and believes, and alleges thereon, that during all relevant times mentioned herein each Defendant was the principal or agent of the other Defendant, and in acting and conducting itself as such principal, or within the course and scope of such agency, took at least some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiff and Class members for the relief sought herein. At all times relevant mentioned herein, the Defendants ratified the unlawful conduct of the other Defendant, who were acting within the scope of their agency or employment, by accepting the benefits of any transaction with knowledge of the wrongdoing, or otherwise by failing to repudiate or retract the misconduct or wrongdoing.

5. Defendant T-Mobile and Defendant Sunrise will be referred to herein, collectively, as "Defendants".

## JURISDICTION AND VENUE

6. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

8. This Court has personal jurisdiction over Defendants because one of Defendant's principal places of business is in this District and a substantial part of the events concerning the unauthorized text messages at issue occurred in this District, establishing minimum contacts showing Defendants have purposefully availed themselves of the resources and protection of the State of Missouri.

9. Venue is proper in the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because one of Defendants' principal places of business is located in this District and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

10. Venue is proper in the Southern Division of this District because Defendant Sunrise has its principal place of business in or near Springfield, Missouri.

## NATURE OF THE ACTION

11. In an attempt to increase its bottom line, Defendant Sunrise, on behalf of Defendant T-Mobile, uses an autodialer to send text messages to consumers on their cellular telephones without their prior express written consent in an effort to solicit consumers' business. Defendant Sunrise conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages to consumers' cellular telephones without consent, including *even* to those who have registered their numbers on the

3

National Do Not Call Registry, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

12.     By sending these text messages, Defendant Sunrise caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages, all contributing to the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant Sunrise sent the text messages knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including the related data, software, and hardware components.

13.     The TCPA was enacted to protect consumers from unwanted disturbances like those alleged and described herein. In response to Defendant Sunrise's unlawful conduct, Plaintiff seeks injunctive relief, requiring Defendant Sunrise to cease all solicitation text-messaging activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorneys' fees.

14.     Defendant T-Mobile is a wireless network provider and no stranger to the TCPA. In fact, in August of 2015, T-Mobile concluded a TCPA settlement worth up to $5 million for over 100,000 class members. In an apparent attempt to circumvent its liability, while still

aggressively promoting its business, T-Mobile utilizes a third party marketer, Sunrise Communications, to do its bidding.[1]

15.     Sunrise Communications is currently advertising for employment vacancies. As part of the job description of who Sunrise is looking for, it says: "We are currently looking for people that possess large personalities, fun, outgoing, naturally social, and of course money driven."[2] In the job details/requirements section, Sunrise writes: "Must be outgoing and aggressive."

16.     But Defendant Sunrise's "money driven" and "aggressive" tactics on behalf of T-Mobile go too far.   In an attempt to promote T-Mobile's business and services, Defendant Sunrise conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**A.  Defendant Sunrise Transmits Text Messages to Consumers Who Do Not Want Them**

17.     Defendant Sunrise, on behalf of Defendant T-Mobile, sends text messages to consumers' cellular telephones in an attempt to solicit business and ultimately increase their bottom lines.

18.     Defendant Sunrise sends text messages promoting T-Mobile's services from telephone number 215-325-9017.

---

[1] https://www.linkedin.com/company/sunrise-communications/

[2]          https://www.ziprecruiter.com/jobs/sunrise-communications-1a1b92cf/inbound-sales-representative-no-experience-required-m-f-9am-5pm-1932b513

5

19.     In sending these text messages, neither Defendant Sunrise nor T-Mobile took steps to acquire the prior express written consent of Plaintiff or the Class members who received the unsolicited text messages.

20.     On information and belief, Defendant Sunrise sent the same (or substantially the same) text message calls *en masse*, promoting T-Mobile to thousands of cellular telephone numbers throughout the United States.

21.     In sending the text messages at issue in this Complaint, Defendant Sunrise utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant Sunrise (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion. Defendant Sunrise's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of sending numerous text messages simultaneously.

22.     Defendant Sunrise and T-Mobile are or should have been aware that text messages were and are being made without the prior express written consent of the text message recipients. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

23.     Each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant T-Mobile and Defendant Sunrise.

24.     By sending the text messages at issue in this Complaint, Defendants caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their

carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

## FACTS SPECIFIC TO PLAINTIFF RYAN STANBURY

25. On July 3, 2003, Plaintiff Stanbury's cellular telephone number was registered on the National Do Not Call Registry for the express purpose of avoiding solicitation calls and/or text messages. Stanbury has had the same cellular telephone number for over ten years.

26. In or around November, 2017, Stanbury received *at least* two solicitation text messages from telephone number 215-325-9017 over the span of approximately one month.

27. For example, on November 7, 2017, Stanbury received a text message from 215-325-9017 that read, "[j]oining T-Mobile has never been simpler! Give us a call ASAP to speak to a live agent! Let's check if you qualify for up to $650 for switching[.]"

28. Just two days later, on November 9, 2017, Stanbury received another text messages from 215-325-9017 that read, "Ryan, you don't have to overpay for your phone bill, call in! Find huge savings by joining T-Mobile today. You could be eligible to get a smartphone for free[.]"

29. Both of the aforementioned text messages are displayed below:

7





30. The telephone number 215-325-9017 is owned and/or affiliated with Sunrise, on behalf of T-Mobile.[3] [4]

31. Stanbury received approximately 6-10 unwanted solicitation text messages from Sunrise.

32. Stanbury has not sought information regarding T-Mobile's services, and has never signed up for T-Mobile's services.

---

[3] Upon calling 215-325-9017 a live agent holds himself or herself out to be an agent of "Sunrise Communications."

[4] Sunrise advertises its connection with T-Mobile on the website www.ziprecruiter.com. There, Sunrise advertised an open employment position for an "[i]nbound [s]ales [r]epresentative" and further explained that "[Sunrise] is …growing our Inbound Sales Campaign for T-Mobile …" *See* https://www.ziprecruiter.com/jobs/sunrise-communications1a1b92cf/inbound-sales-representative-m-f-9am-5pm-4e487718.

33.     Accordingly, Stanbury did not request that Sunrise and/or its affiliates send text messages to him or offer him its services using an ATDS.  Simply put, Stanbury has never provided his prior express written consent to Sunrise and/or T-Mobile to send solicitation text messages to him and he has no business relationship with Sunrise and/or T-Mobile.

34.     By sending unauthorized text messages as alleged herein, Sunrise, on behalf of T-Mobile, has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Stanbury's use and enjoyment of his cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as Sunrise fails to receive a call-recipient's prior express written consent and completely ignores telephone numbers associated with the National Do Not Call Registry.

## COMMON FACTUAL ALLEGATIONS

35.     Defendant Sunrise Communications, Inc. is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

36.     Defendant T-Mobile USA, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39)

37.     In recent years, companies such as Defendant T-Mobile have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing recruits new customers.

38.     Text messages, like the ones sent in the instant action, are calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also*

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

39.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

40.     With regard to calls or texts made for telemarketing purposes, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

41.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made or a text is sent bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

10

42.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

43.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing also "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[5]

44.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

45.     The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

46.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be

---

[5] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

47.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

48.     Yet, in violation of these clear standards, Defendant Sunrise, on behalf of Defendant T-Mobile, fails to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers.

49.     At all times material to this Complaint, Defendants were and are fully aware that unsolicited telemarketing text messages are being sent to consumers' cellular telephones through their own efforts and/or their agents'.

50.     Defendant Sunrise knowingly sent (and continues to send) unsolicited telemarketing text messages on Defendant T-Mobile's behalf without the prior express written consent of the recipients, including even to those who have requested that the text messages stop and have their number registered on the National Do Not Call Registry. In so doing, Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## CLASS ACTION ALLEGATIONS

51.    On behalf of the Classes, Stanbury seeks an injunction requiring Defendants to cease all improper wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

52.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following two Classes:

> **Text Message No Consent Class:** All persons in the United States to whom, from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendants (or a third person acting on behalf of Defendants) sent at least one solicitation text message, (2) to the person's cellular telephone number, and (3) for whom Defendants cannot provide valid evidence of prior express written consent.

> **Do Not Call Registry Class**: All persons in the United States who (1) Defendants (or a third person acting on behalf of Defendants) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendants cannot provide valid evidence of prior express written consent.

53.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff may need to amend the Class definitions following appropriate discovery.

13

54.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendants' records.

55.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a) whether Defendants' conduct constitutes a violation of the TCPA;
>
> (b) whether Defendants utilized an automatic telephone dialing system to send text messages to members of the Classes;
>
> (c) whether members of the Classes are entitled to statutory damages and/or treble damages based on the willfulness of Defendants' conduct;
>
> (d) whether Defendants systematically sent multiple text messages to consumers whose telephone numbers were registered with the National Do Not Call Registry; and
>
> (e) whether Defendants obtained prior express written consent to contact any Class members.

56.     **Typicality:** As a person who received non-emergency texts on his cellular telephone using an automatic telephone dialing system without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such texts.

57.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions, particularly under the TCPA. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are

committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

58.     This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.

59.     Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the most members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Text Message No Consent Class)**

60.     Plaintiff repeats and re-alleges the foregoing paragraphs of this Complaint and incorporates them herein by reference.

61.    Defendants sent solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

62.    Defendants sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*. The telephone dialing equipment utilized by Defendants dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' autodialer disseminated information *en masse* to Plaintiff and other consumers.

63.    By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

64.    Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

65.    In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class.

16

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

66. Plaintiff incorporates and re-alleges by reference paragraphs 1-59 as if fully set forth herein.

67. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[6]

---

[6] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

17

70.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

18

receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

71.  Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to persons such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

72.  Defendants also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call (or text) requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and/or by failing to internally record and honor do not call requests.

73.  Defendants sent more than one unsolicited text message to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive text messages from Defendants, and/or Defendants do not have a current record of consent to place telemarketing text messages to them.

74.  Defendants violated 47 C.F.R. § 64.1200(d) by initiating text messages for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

75.  Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf

19

of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for each such violation of 47 C.F.R. § 64.1200.

76.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

77.    An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing his counsel as Class Counsel;

78.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

79.    An order declaring that Defendants' actions, as set out above, violate the TCPA;

80.    A declaratory judgment that Defendants' text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

81.    An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

82.    An order requiring Defendants to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

83.    An injunction requiring Defendants to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

20

84.     An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

85.     An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

86.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

87.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: December 14, 2017              Respectfully Submitted,

                                      **WILLIAMS DIRKS DAMERON LLC**


                                      By:   _/s/ Matthew L. Dameron_____

                                      Matthew L. Dameron
                                      Missouri Bar No. 52093
                                      John F. Doyle
                                      Missouri Bar No. 66626
                                      1100 Main Street, Suite 2600
                                      Kansas City, Missouri 64105
                                      Telephone: (816) 945-7110
                                      Facsimile: (816) 845-7118
                                      Email:  matt@williamsdirks.com
                                      Email:  jdoyle@williamsdirks.com

21

Matthew R. Wilson (*pro hac vice* to be filed)
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com
Email: mboyle@meyerwilson.com

Stefan Coleman (*pro hac vice* to be filed)
THE LAW OFFICE OF STEFAN COLEMAN,
P.A.
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8248
Email: Law@stefancoleman.com

*Attorney for Plaintiff and the Proposed Classes*